**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Sarah R. Lavelle, Esq. (93383)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHLEEN PICIU** | : | **Civil Action No.** |
| **203 Hamilton Circle** | : | |
| **Harrisburg, PA 17111** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **VERIZON COMMUNICATIONS, INC.** | : | |
| **d/b/a VERIZON WIRELESS** | : | |
| **299 Westminster Drive** | : | |
| **Carlisle, PA 17013** | : | |
| | : | |
| **One Verizon Way** | : | |
| **Basking Ridge, NJ 07920** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Kathleen Piciu (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Verizon Communications, Inc. d/b/a Verizon Wireless (hereinafter "Defendant"), for violations of the Americans with Disability Act 1990 ("ADA"), as amended, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended , the Pregnancy Discrimination Act ("PDA"), and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Verizon Communications, Inc. d/b/a Verizon Wireless is a telecommunications company with a location at 299 Westminster Drive, Carlisle, PA 17013 and with a corporate headquarters located at One Verizon Way, Basking Ridge, NJ 07920.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA, Title VII and the PDA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging retaliation and gender, disability and pregnancy discrimination against Defendant.

14. The Complaint was assigned a Charge Number 530-2018-03695 and was dual filed with the Pennsylvania Human Relations Commission.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") on March 5, 2019. Plaintiff received the Notice by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On May 5, 2014, Defendant hired Plaintiff as a Solutions Specialist at its Mechanicsburg, PA location.

21. Plaintiff was well qualified for her position and performed well.

22. On September 27, 2015, Defendant promoted Plaintiff to Solutions Manager.

23. Plaintiff was well qualified for her position and performed well.

24. In or around July 2016, Brian Stackhouse began to sexually harass Plaintiff.

25. Mr. Stackhouse frequently came up behind Plaintiff and rubbed her shoulders, made sexual innuendos and was flirtatious with her.

26. During a team building outing on October 2, 2016, Mr. Stackhouse put his hand up Plaintiff's shirt and attempted to force her to get into his car with him.

27. Plaintiff denied Mr. Stackhouse's advances which caused him to fly into a fit of rage and break the windshield of a car in the parking lot.

28. The police were contacted because Mr. Stackhouse refused to leave unless Plaintiff went with him.

29. On October 3, 2016, Plaintiff reported the incident to Roseanna Rocco, District Manager, who advised Plaintiff to report it to Human Resources.

30. Plaintiff followed Ms. Rocco's instructions and reported the incident involving Mr. Stackhouse to Danielle Ostrowski, Human Resource Business Partner.

31. However, Mr. Stackhouse was not disciplined or terminated for sexually harassing Plaintiff.

32. Plaintiff later learned that Christopher Flood, Director of Wireless Small Business Sales, had jokingly patted Mr. Stackhouse on the back and asked, "How are you doing troublemaker?", thereby condoning his sexual harassment of Plaintiff.

33. After it was discovered that Plaintiff had reported Mr. Stackhouse for sexual harassment, Plaintiff's coworkers proceeded to shun Plaintiff.

34. In March 2017, Plaintiff discovered that she was pregnant and notified Michael Shafer, General Manager.

35. Shortly afterwards, Plaintiff began to suffer from complications related to her pregnancy which caused her to be in severe pain.

36. Plaintiff was diagnosed with an irritable uterus and Symphysis Pubis Dysfunction.

37. These complications caused Plaintiff to be at risk for pre-term contractions and labor.

38. Plaintiff was substantially limited in the major life activities of standing and walking.

39. With a reasonable accommodation, Plaintiff could perform the essential functions of her position.

40. On April 4, 2017, Dr. George Miller placed Plaintiff on the medical restrictions to not work more than eight (8) hours in a day and to have two (2) 15-minute breaks along with her 30-minute lunch break.

41. Plaintiff gave Dr. Miller's note detailing her requested accommodations to Mr. Shafer and Ms. Ostrowski.

42. However, Mr. Shafer refused to provide the reasonable accommodations to Plaintiff.

43. He frequently scheduled Plaintiff to work shifts over eight (8) hours and made her the only manager on the sales floor, so that she was prohibited from taking her prescribed breaks.

44. On the rare occasion that Plaintiff was able to take a break, Mr. Shafer would instruct her to return to the sales floor before her prescribed break was over.

45. On July 17, 2017, Plaintiff called Ms. Ostrowski and complained about Mr. Shafer not providing her with her requested reasonable accommodations.

46. On July 19, 2017, Dr. Miller placed Plaintiff on the additional medical restriction of working no more than six (6) hours per day.

47. However, Mr. Shafer continued to violate Plaintiff's medical restrictions by scheduling her to work shifts over six (6) hours and not providing her with her prescribed breaks.

48. Due to Defendant's failure to provide Plaintiff with reasonable accommodations, Dr. Miller removed Plaintiff from work on September 8, 2017. Plaintiff was set to return to work on April 8, 2018.

49. If Defendant had provided the reasonable accommodations to Plaintiff, she would have been able to continue to work.

50. Prior to going out on her medical leave of absence, Defendant increased the number of Solutions Managers at Plaintiff's location from two (2) to three (3) Solutions Managers.

51. In January 2018, Mr. Shafer called Plaintiff to ask her if she was interested in applying for a General Manager position.

52. Plaintiff informed Mr. Shafer that she was interested in the position, which was a promotional opportunity.

53. However, when Mr. Shafter stated to Plaintiff that she needed to return to work to apply for the General Manager position (three (3) months earlier than she could return to work), Plaintiff was forced to decline the position.

54. In early February 2018, Louis Martins, District Manager, informed Plaintiff that Defendant was going to relocate her from its Mechanicsburg location to its Carlisle location.

55. Mr. Martins stated to Plaintiff that Defendant decreased the Solutions Managers to two (2) at its Mechanicsburg location, and it would not be "back filling" the position.

56. Prior to going out on medical leave, and prior to Defendant adding a third Solutions Manager position, Plaintiff had been one of the two (2) Solutions Managers at the Mechanicsburg location.

57. Defendant effectively eliminated Plaintiff's position while she was out on leave. Moreover, Defendant should not have relocated Plaintiff, but, instead, should have relocated the individual who had been hired to fill the, now eliminated, third Solution Manager position at the Mechanicsburg location.

58. The transfer to Defendant's Carlisle location resulted in Plaintiff having over an hour commute in each direction and created an undue hardship on her as she needed to nurse her newborn child.

59. Plaintiff complained to Amy Rovers, Human Resource Business Partner, about the transfer and how it created an undue hardship on her.

60. On March 12, 2018, Ms. Rovers informed Plaintiff that Defendant did not consider the excessive commute to be a hardship and that she was going to be transferred.

61. Upon information and belief, Defendant could have transferred Josh Garisto or Monty Clayton, both of whom were not pregnant, were not on a leave related to child birth, did

not complain of sexual harassment, did not request a reasonable accommodation and did not have medical restrictions.

62. On April 8, 2018, Plaintiff returned to work at Defendant's Carlisle location.

63. On April 18, 2018, Penny Sue Freeman, Director of Retail, visited the Carlisle location while Plaintiff was working.

64. Ms. Freeman asked Plaintiff why Plaintiff's mother had brought Plaintiff's newborn daughter to work and Plaintiff explained that her daughter does not take a bottle, so Plaintiff's mother brings her to work so Plaintiff can feed her daughter during her lunch breaks.

65. Shortly afterwards, Ms. Freeman was discussing work-related suggestions to Plaintiff when she stated, "This will help you for a promotion down the road. It'll be once your daughter is older and relies on you less for food."

66. Ms. Freeman essentially told Plaintiff that Defendant would not promote her due to having to care for her newborn.

67. In addition, Plaintiff's coworker reported to her that Mary Bokeko, Operations Specialist, complained about Plaintiff taking the full six (6) months of her maternity leave and how it was not necessary.

68. On May 14, 2018, Plaintiff submitted a Charge with the Equal Employment Opportunity Commission alleging violations of the PDA, Title VII and the ADA.

69. In or around November 2018, Defendant alleged that it had overpaid Plaintiff approximately $17,000 and required that she pay them back.

70. Defendant required Plaintiff to pay back the money post-tax despite Defendant having issued the money pre-tax.

71. Plaintiff denies that Defendant had overpaid her $17,000.

72. Plaintiff further asserts that Defendant's request that she re-pay Defendant $17,000, post-tax, is retaliatory.

73. Defendant has still not sufficiently explained to Plaintiff how she was allegedly overpaid $17,000 or why she must repay that amount, post-tax.

## COUNT I
## DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

76. Plaintiff was subject to an adverse employment action, including, but not limited to, being denied a promotional opportunity and the transfer of Plaintiff to an unfavorable location.

77. Plaintiff's disabilities motivated Defendant's decision to deny Plaintiff an promotional opportunity and the transfer Plaintiff to an unfavorable location.

78. The purported reason for Defendant's decision is pretextual.

79. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

80. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra.*

## COUNT II
## FAILURE TO ACCOMMODATE
## THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

81. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

82. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had, at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

83. Plaintiff was qualified to perform her position with or without reasonable accommodations.

84. Plaintiff requested a reasonable accommodation; specifically, to be scheduled to work no more than eight (8) hours per day and to have two (2) 15-minute breaks along with her 30-minute lunch break.  Plaintiff submitted a medical note to Defendant regarding this accommodation request.

85. Subsequently, Plaintiff requested a second reasonable accommodation to be scheduled to work no more than six (6) hours per day, and she submitted a medical note to Defendant regarding this accommodation request.

86. With these reasonable accommodations, Plaintiff would be able to perform the essential functions of her position.

87. Plaintiff's requested accommodations were reasonable, and it would not impose an undue

hardship on Defendant.

88. Defendant failed to provide Plaintiff with a reasonable accommodation to allow her to perform the essential functions of her position.

89. Defendant failed to engage in the interactive process with Plaintiff as it failed to offer, or consider, any reasonable accommodation in lieu of Plaintiff's medically prescribed accommodation.

90. As a result of Defendant's refusal to accommodate Plaintiff, Plaintiff was forced to go out on a medical leave.

91. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III
## FAILURE TO ACCOMMODATE
## THE PENNSYLVANIA HUMAN RELATIONS ACT

92. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

93. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

94. Plaintiff was qualified to perform her position with or without reasonable accommodations.

95. Plaintiff requested a reasonable accommodation; specifically, to be scheduled to work no

more than eight (8) hours per day and to have two (2) 15-minute breaks along with her 30-minute lunch break.  Plaintiff submitted a medical note to Defendant regarding this accommodation request.

96. Subsequently, Plaintiff requested a second reasonable accommodation to be scheduled to work no more than six (6) hours per day, and she submitted a medical note to Defendant regarding this accommodation request.

97. With these reasonable accommodations, Plaintiff would be able to perform the essential functions of her position.

98. Plaintiff's requested accommodations were reasonable, and it would not impose an undue hardship on Defendant.

99. Defendant failed to provide Plaintiff with a reasonable accommodation to allow her to perform the essential functions of her position.

100. Defendant failed to engage in the interactive process with Plaintiff as it failed to offer, or consider, any reasonable accommodation in lieu of Plaintiff's medically prescribed accommodation.

101. As a result of Defendant's refusal to accommodate Plaintiff, Plaintiff was forced to go out on a medical leave.

102. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV**
**PREGNANCY DISCRIMINATION**
**PREGNANCY DISCRIMINATION ACT**

103. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

104. Plaintiff is a member of a protected class in that she is pregnant.

105. Plaintiff was qualified to perform the job for which she was hired.

106. Defendant did not provide Plaintiff with reasonable accommodations.

107. Defendant forced Plaintiff to go on a leave of absence, refused to allow her to apply for a promotion, and transferred her to an unfavorable location.

108. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination

109. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

110. Defendant discriminated against Plaintiff on the basis of her pregnancy.

111. Defendant treated non-pregnant employees better than it treated Plaintiff.

112. Defendant has no legitimate non-discriminatory reason for its actions.

113. As a result of Defendant's unlawful pregnancy discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*


**COUNT V**
**PREGNANCY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

114. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

115. Plaintiff is a member of a protected class in that she is pregnant.

116. Plaintiff was qualified to perform the job for which she was hired.

117. Defendant did not provide Plaintiff with a reasonable accommodation.

118. Defendant forced Plaintiff to go on a leave of absence, refused to allow her to apply for a promotion, and transferred her to an unfavorable location.

119. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

120. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

121. Defendant discriminated against Plaintiff on the basis of her pregnancy.

122. Defendant treated non-pregnant employees better than it treated Plaintiff.

123. Defendant has no legitimate non-discriminatory reason for its actions.

124. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI
## RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

125. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

126. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation.

127. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, a forced leave of absence, an unfavorable transfer and attempting to force

Plaintiff to repay Defendant $17,000, post-tax, for an alleged overpayment.

128. There exists a causal connection between Plaintiff's participation of the protected

activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

**COUNT VII**
**RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

129. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

130. Plaintiff engaged in activity protected by Title VII when she reported sexual harassment

and filed a Charge with the EEOC.

131. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but

not limited to, a forced leave of absence, an unfavorable transfer and attempting to force

Plaintiff to repay Defendant $17,000, post-tax, for an alleged overpayment.

132. There exists a causal connection between Plaintiff's participation of the protected

activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

**COUNT VIII**
**RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

133. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

134. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable

accommodation, reported sexual harassment and filed a Charge with the EEOC.

135. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, a forced leave of absence, an unfavorable transfer and attempting to force Plaintiff to repay Defendant $17,000, post-tax, for an alleged overpayment.

136. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kathleen Piciu, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Emotional pain and suffering;

(d)     Reasonable attorneys' fees;

(e)     Recoverable costs;

(f)     Pre and post judgment interest;

(g)     An allowance to compensate for negative tax consequences;

(h)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, PDA, Title VII and the PHRA.

(i)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

### JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

### CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: June 6, 2019            By:   /s/ David M. Koller
                                    David M. Koller, Esquire
                                    Sarah R. Lavelle, Esquire
                                    2043 Locust Street, Suite 1B
                                    Philadelphia, PA 19103
                                    215-545-8917
                                    davidk@kollerlawfirm.com
                                    slavlle@kollerlawfirm.com

                                    *Counsel for Plaintiff*